# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| LONE STAR TARGETED ADVERTISING, LLC,<br><br>                Plaintiff,<br><br>   v.<br><br>AMOBEE, INC.<br><br>                Defendant. | CASE NO.<br><br>COMPLAINT FOR PATENT INFRINGEMENT<br><br>JURY DEMAND |

Plaintiff Lone Star Targeted Advertising, LLC ("LSTA"), for its Complaint against Amobee, Inc. ("Defendant" or "Amobee"), alleges as follows:

## PARTIES

1. Plaintiff Lone Star Targeted Advertising, LLC ("LSTA") is a limited liability company organized under the laws of the State of Texas with its principal place of business in Dallas, Texas.

2. On information and belief, Amobee, Inc. is a company organized under the laws of Delaware.

## JURISDICTION AND VENUE

3. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq*.

4. This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant because Defendant has transacted and is transacting business in the District of Delaware that includes, but is not limited to, the use of products and systems that practice the subject matter claimed in the patents involved in this action.

6. Venue is proper in this district under 28 U.S.C. 1400(b) because on information and belief, Defendant has committed acts of infringement within this District. In addition, the Defendant is a registered corporation in the State of Delaware.

## FACTS

7. On October 9, 2001, U.S. Patent No. 6,301,619, entitled "System and Method for Providing Service of Sending Real Time Electronic Information to Selected Individual Viewers of Transmitted Video or Computerized Signals" was duly and legally issued. A true and correct copy of the '619 Patent is attached hereto as Exhibit A. The '619 Patent issued from application Serial Number 09/260,035 filed March 2, 1999. The inventors assigned all right, title and interest in the '619 Patent to Oplus Technologies Ltd. Oplus Technologies Ltd. assigned its entire right, title, and interest in '619 Patent to Lone Star Technological Innovations, LLC, who then assigned its entire right, title, and interest in the '619 Patent to LSTA. LSTA is the sole owner of all rights, title, and interest in and to the '619 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '619 Patent.

8. Claim 9 of the '619 Patent states:

A method for a sender sending real time electronic information to a viewer of transmitted video signals, the method comprising the steps of:

(a) providing viewer attribute information related to the viewer;

(b) receiving and storing said viewer attribute information by an electronic device, included with an in communication with a television belonging to the view, said viewer attribute information input into said electronic device by the viewer;

(c) providing sender requested electronic information of the sender to be transmitted by request of the sender to the viewer, said sender requested electronic information of the sender is included with a non-viewer provided subset of said viewer attribute information related to the viewer;

(d) providing a service center for communicating to a television station provider of the

>transmitted video signals encoding instructions to form encoded sender requested electronic information of the sender;
>
>(e) transmitting a compound video signal including said non-viewer provided subset of viewer attribute information and said encoded sender requested electronic information of the sender by said television station provider of the transmitted video signals to said electronic device included with and in communication with said television belonging to the viewer;
>
>(f) making a decision selected from the group consisting of accepting said encoded sender requested electronic information of the sender and not accepting said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer, whereby said decision by said electronic device accepting said encoded sender requested electronic information the sender is made by recognizing said non-viewer provided subset of said viewer attribute information;
>
>(g) decoding said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form decoded sender requested electronic information of the sender;
>
>(h) formatting said decoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form formatted decoded sender requested electronic information of the sender;
>
>(i) opening up of a subwindow within said television belonging to the viewer; and
>
>(j) displaying said formatted decoder sender requested electronic information of the sender within said subwindow within said television belonging to the viewer.

On information and belief, Amobee infringes Claim 9 of the '619 Patent. Specifically,

>"On Amobee platform, advertisers can plan and forecast campaigns across Connected TV, linear TV, mobile and desktop, measure the audience exposure during a campaign, optimize the targeting and cross-channel allocation, and access pacing and reporting across the four screens.
>
>Amobee says that for the first time, ad buyers will be able to use the same analytics across linear TV and connected TV exposure, giving advertisers the ability to understand the impact of cross-screen buying and optimize campaigns in near real-time against Nielsen demographics for maximum reach and impact.

> 'Nothing beats the ROI of TV for mass audience reach and driving brand awareness. But as consumers increasingly use video on demand and other streaming services, the industry has struggled to keep up with the fragmentation. Amobee, combined with Nielsen's trusted, standard TV audiences, are bridging the gap between CTV and linear TV,' said Philip Smolin, Chief Strategy Officer at Amobee. 'This is the cross-screen solution the industry has been waiting for, and we're thrilled to collaborate with Nielsen to bring it to market for the first time for both advertisers and broadcasters.'"

*See* https://ppc.land/amobee-integrates-nielsen-generated-demographics-across-connected-tv-linear-tv-mobile-and-desktop/

9. Amobee's system infringes each element of Claim 9 as follows:

a. "providing viewer attributable information related to the viewer" – Amobee utilizes viewer attribute information via advance audience analytics. In particular, "[c]onsolidating TV, digital and social, Amobee allows advertisers to understand and influence the consumer journey through the following Advanced TV and converged solutions" *See* https://reprints.forrester.com/#/assets/2/1696/RES144017/reports.

"Amobee, a global digital marketing technology company serving brands and agencies, today announced it has completed the acquisition of assets from Videology—a leading software provider for advanced TV and video advertising—advancing its connected TV and digital video solutions with sophisticated data-driven linear TV planning tools, premium inventory partnerships and activation opportunities for clients worldwide" *See* https://www.amobee.com/newsroom/amobee-completes-acquisition-of-videology-expands-advanced-tv-and-video-advertising-capabilities/.



b.        "receiving and storing said viewer attribute information by an electronic device included with an in communication with a television belonging to the viewer, said viewer attribute information input into said electronic device by the viewer" – In order for Amobee to utilize its platform and analytical system, an electronic device of the viewer's is in communication with a TV in order to obtain "real-time" audience data and insights.  For most viewers, on information and belief, this will be a set top box that provides the real-time analytics information to the "sender."  "Anyone in control of TV or cross-channel advertising budgets needs a sophisticated understanding of how TV audiences behave. But they also need the most accurate and reliable TV, CTV, and digital viewership data to identify which shows and

commercials consumers are watching on linear, connected, and digital channels (including social) to better optimize against those audiences.  Amobee understands which networks, dayparts, and shows consumers are watching across all screens and can build complementary digital targeting solutions through our TV Amplifier solution" *See* https://www.amobee.com/blog/stop-overspending-on-tv-questions-to-ask-your-tv-amplification-and-cross-screen-targeting-partners/.



        c.       "providing sender requested electronic information of the sender to be transmitted by request of the sender to the viewer, said sender requested electronic information of the sender is included with a non-viewer provided subset of said viewer attribute information related to the viewer" --   On information and belief, targeted advertisement based on the campaign being run using Amobee's platform meets this requirement, as the sender is requesting the sending of information from sender to viewer based on viewer attributable information.





    d.  "providing a service center for communicating to a television station provider of the transmitted video signals encoding instructions to form encoded sender requested electronic information of the sender" -- Amobee's platform is the service center that interfaces in providing information of advertiser, content provider, and the viewer. "The fragmentation of media and the rise of connected TV (CTV) are catalysts for the convergence of TV and digital advertising. As the gateway to more precise audience targeting in premium TV content, CTV empowers marketers to leverage data across today's most watched screens where the most coveted audiences spend their viewing time.  A unified workflow — purpose-built to support premium video and especially CTV — is critical to the smooth adoption and efficient execution of campaigns that seek to holistically reach TV and digital audiences.  'Amobee's best-in-class self-serve UI is the foundational cornerstone of our cross-channel advertising

platform,' said Caity Noonan, VP, Product Marketing for Amobee. 'We're thrilled to empower media teams everywhere with greater ease-of-use, increased control, including customizable features, and improved transparency while expediting the learning curve to meet and exceed campaign KPIs.'  The end-to-end UI increases the speed and optimization of overall campaign monitoring with improved auditing and collaboration capabilities, and a new segment builder to consolidate audience and demo discovery. (Coming soon, a single-view design and proprietary Amobee Brand Intelligence analytics built directly into the platform for monitoring premium video and CTV audiences and performance data insights.)" *See* https://www.amobee.com/blog/the-key-to-tv-digital-convergence-a-unified-workflow-built-to-support-ctv/.



e. "transmitting a compound video signal including said non-viewer provided subset of viewer attribute information and said encoded sender requested electronic information of the sender by said television station provider of the transmitted video signals to said electronic device included with and in communication with said television belonging to the viewer." -- This element is met as Amobee transmits and sends encoded information, e.g. video to viewers including non-viewer provided information in order to deliver ads targeted to the viewer, especially in regard to the Amobee's platform's ability to:



      f.  "making a decision selected from the group consisting of accepting said encoded sender requested electronic information of the sender and not accepting said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer, whereby said decision by said electronic device accepting said encoded sender requested electronic information the sender is made by recognizing said non-viewer provided subset of said viewer attribute information" – On information and belief, inherently, the only logical next step for said device is to determine whether to accept (for purposes of viewing/displaying) said sender requested electronic information based on whether the transmitted subset of viewer attribute information matches viewer attribute information on the device. The device determines whether a given transmission is intended for it by checking if the transmission is tagged with attributes matching its own local attributes.

  Per the standard process of OTT ad insertion: "Playback devices will read the top level manifest and learn the available profiles. **They will then decide on a profile, read its individual manifest and start reading decoding the segments**. If the network conditions change, the playback device may switch to a higher or lower profile as needed. On a live stream, manifests are frequently updated." *See* https://www.tvtechnology.com/opinions/scte10435-and-beyond-a-look-at-ad-insertion-in-an-ott-world.

    g. "decoding said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form decoded sender requested electronic information of the sender" – On information and belief, encoded information is decoded in order for the information to be displayed to the viewer.

    h. "formatting said decoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form formatted decoded sender requested electronic information of the sender" – On information and belief, decoded information is necessarily formatted in an appropriate manner consistent with the display requirements of the television with which it is in communication.

    i. "opening up of a subwindow within said television belonging to the viewer" – A television screen displays content. Within the television, on information and belief, there are other windows, such as when choosing the menu which pops up. At least for example, when dynamic brand insertion is utilized.

    j. "and, displaying said formatted decoder sender requested electronic information of the sender within said subwindow within said television belonging to the viewer" -- On information and belief, after accepting, decoding, and formatting sender requested electronic information, the electronic device necessarily displays said sender requested electronic information.

## FIRST CLAIM FOR RELIEF

### Patent Infringement of the '619 Patent (35 U.S.C. §§ 101, et seq.)

10. LSTA refers to and incorporates herein by reference paragraphs 1-9.

12. Defendant infringed, either directly or indirectly, at least Claim 9 of the '619 Patent in this judicial district and the United States, through the services they provided as outlined at www.makethunder.com and as described above.

13. Defendant, therefore, by the acts complained of herein, made, used, sold, or offered for sale in the United States, including in the District of Delaware, products and/or services embodying the patented method, and have in the past infringed the '619 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §271(a).

14. To the extent that some elements of claim 9 were performed by a different party than Amobee, Amobee participated in the infringement (as described above) and received a benefit upon performance of the steps of the patented method. For example, Amobee provided the software and technology that established viewer attribute information related to the viewer that can be collected, and how that information was transmitted, received, stored and acted upon in accordance with the patented method. Amobee received a benefit from such actions by the customer and television station provider as it allowed targeted advertising to be displayed through the top set box.

15. Upon information and belief, the acts described above concerning the use, offer for sale, sale, operation, distribution, and/or installation of Amobee's products and/or software and those described below also constitute acts of induced and contributory infringement. Customers and users used the infringing products and software to provide targeted ads.

16. To the extent that some elements of a claim were performed by a different party than Amobee, Amobee, through its software and infringing products, participated in the infringement (as described herein) and receives a benefit upon performance of steps of a patented method. For example, Amobee provided the software and technology that established viewer attribute information related to the viewer that can be collected, and how that information was transmitted, received, stored and acted upon in accordance with the patented method. Amobee received a benefit from such actions by the customer and television station provider as it allowed targeted advertising to be displayed.

17. Upon information and belief, Amobee provided its customers and/or users of its products and software instructions to use, load and operate in an infringing manner or to create and use infringing products. Upon information and belief, Amobee further induced its customers

and/or users of Amobee's platform to use its products (and accompanying software) by providing subscriptions to Amobee's platform.  Further, Amobee had actively induced infringement by its customers and/or users of Amobee's products and software in this judicial district.  Upon information and belief, Amobee knowingly and specifically designed Amobee's platform in a manner that infringed the '619 Patent.  Upon information that belief, Amobee also provides support services for claim 9 of the '619 Patent.  Amobee's targeted advertising method has no substantial non-infringing use.  Amobee has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within the jurisdiction and elsewhere. Upon information and belief, Amobee continued to provide instructions since having notice and actual knowledge of the '619 Patent.

18. Upon information and belief, Amobee's method has no substantial non-infringing uses and is especially made and/or adapted so as to infringe the '619 Patent.  Amobee has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within this District and elsewhere.

19. Plaintiff has complied with the notice requirement of 35 U.S.C. § 287 and does not currently make, use, sell offer for sale products or services embodying the '619 Patent.

20. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contentions or claim construction purposes by the infringement allegations that it provides with this Complaint.  The element-by-element analysis herein is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

21. By reason of the acts of Amobee alleged herein, LSTA has suffered damage in an amount to be proved at trial.

## JURY DEMAND

LSTA demands a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, LSTA prays for relief as follows:

A. Judgment that Defendant has directly infringed, and induced others to infringe, the '619 Patent either literally and/or under the doctrine of equivalents;

B. Judgment awarding LSTA general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as appropriate, as well as all of Defendant's profits or gains of any kind from their acts of patent infringement from six years prior to the filing of the complaint until March 2, 2019;

C. Judgment awarding LSTA all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

D. Judgment awarding LSTA pre-judgment and post-judgment interest; and

E. Judgment awarding LSTA such other and further relief as the Court may deem just and proper.

Dated: March 11, 2021

Respectfully submitted,

STAMOULIS & WEINBLATT LLC


By: /s/ Stamatios Stamoulis
      Stamatios Stamoulis (No. 4606)
      800 N. West Street, Third Floor
      Wilmington, DE 19809
      (302) 999-1540
      stamoulis@swdelaw.com

      John A. Lee (pro hac vice pending)
      jlee@banishlaw.com
      Banie & Ishimoto LLP
      2100 Geng Road, Suite 210
      Palo Alto, CA 94303
      T: 650.241.2774
      F: 650.241.2770

      Attorneys for Plaintiff
      Lone Star Targeted Advertising, LLC